# United States Court of Appeals
## For the First Circuit

No. 15-2541

UNITED STATES OF AMERICA,

Appellee,

v.

KYLE HURLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Jeffrey M. Brandt, with whom Robinson & Brandt, P.S.C. was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief, for appellee.

November 23, 2016

**TORRUELLA**, **Circuit Judge**.  Kyle Hurley pleaded guilty to conspiracy to distribute, and possess with the intent to distribute, controlled substances.  Hurley stipulated to possession of 1,451.7 kilograms of synthetic cannabinoid product, which consisted of the chemicals XLR11 and AB-FUBINACA sprayed onto plant leaves.  After a sentencing hearing, the district court sentenced Hurley to 114 months of imprisonment.  Hurley appeals his sentence.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  Hurley's Arrest

Early in 2014, undercover officers started purchasing synthetic cannabinoid products from convenience stores supplied by Robert Costello.  Hurley was Costello's supplier, and, after undercover officers asked Costello if he could supply them with large quantities of product, Costello agreed to introduce the undercover officers to Hurley.  At the meeting, Hurley agreed to provide fifteen kilograms of synthetic cannabinoid product for $7,500.  Costello retrieved and delivered the product, and Hurley called one of the undercover officers to confirm that he was happy with the product.  Thereafter, Hurley participated in a series of recorded discussions with the undercover officers to arrange a larger transaction, and ultimately he provided the officers with

approximately 1,100 kilograms of synthetic cannabinoid product in exchange for approximately $500,000.

Officers arrested Hurley after he picked up the money. Following his arrest, search warrants were executed at Costello's home in Lawrence, Massachusetts, at a garage on property owned by Hurley's relative in Seabrook, New Hampshire, and at a location in Epping, New Hampshire where Hurley manufactured the product. At these locations, officers discovered more synthetic cannabinoid product.

**2. Hurley's Product**

Synthetic cannabinoid products are created by mixing an organic "carrier" medium, typically an herb-like substance such as damiana leaves,[1] and a synthetic compound. Once manufactured, the final product is intended to resemble marihuana and is typically smoked in pipes or joints and can also be made into tea. The leaves in the product are inert, so the psychoactive effect on the user derives exclusively from the chemical sprayed onto the leaves. Synthetic cannabinoid products, in general, can have similar psychological and physiological effects to marihuana. Hurley made his product by placing inert, non-narcotic leaves in a cement

---

[1] The damiana plant grows in subtropical regions of the Americas and Africa and is widely used in traditional medicine and as a food flavoring. Catherine E. Ulbricht, Natural Standard Herb & Supplement Guide 279 (2010).

mixer, spraying the leaves with two chemicals, AB-FUBINACA and XLR11, and then applying acetone to the product to dry it out.

## B.   Procedural History

Hurley pleaded guilty to conspiracy to distribute, and possess with the intent to distribute, controlled substances. The presentence report attributed 1,451.7 kilograms of synthetic cannabinoid product to Hurley, and he did not contest the amount. The district court held a sentencing hearing, at which a significant issue was whether Hurley's product was most similar to tetrahydrocannabinol ("THC") or marihuana.

The United States Sentencing Guidelines (the "Guidelines") provide "Drug Equivalency Tables," which allow a given quantity of a drug to be converted to an "equivalent" weight of marihuana. U.S.S.G. § 2D1.1 cmt. n.8(D). This marihuana equivalent is then used to calculate a defendant's base offense level. Id. § 2D1.1 cmt. n.8(A).

Because the Guidelines do not provide a marihuana equivalent ratio for AB-FUBINACA and XLR11 (or other synthetic cannabinoids), the district court had to determine which listed drug was "most closely related" to those chemicals -- marihuana or THC. Id. § 2D1.1, cmt. n.6. The "Schedule I Marihuana" table gives a marihuana equivalent ratio of 1:1 for marihuana and 1:167 for THC. Id. § 2D1.1, cmt. n.8(D). Thus, Hurley would be

responsible for the equivalent of 1,451.7 kilograms of marihuana if the proper comparator was marihuana but 242,433.9 (1,451.7 times 167) kilograms of marihuana if the proper comparator was THC.

Hurley contended that marihuana was the proper comparator. He argued, first, that marihuana was the correct comparator because prior publications by the Drug Enforcement Agency ("DEA") compared synthetic cannabinoids to marihuana, not THC. Second, Hurley argued that the district court should not impose the 1:167 ratio because there was no empirical basis for the Guidelines' conversion rate. The Government asserted that THC was the correct comparator, and it introduced expert reports from a DEA pharmacologist, Dr. Jordan Trecki, to support its conclusion. Based on animal studies, Dr. Trecki's reports concluded that AB-FUBINACA and XLR11 have "subjective effects that are substantially similar to the effects of THC" and that they are "at least as potent, if not more potent than THC."

The district court ruled that THC was the appropriate comparator drug, even though it considered the recommended sentence to be "an anomaly." It relied on Dr. Trecki's conclusions, the persuasive precedent from other district courts using this conversion rate, and the fact that a different defendant in the case was previously sentenced using THC as the comparator,

-5-

so disregarding the rate in this case would create an "inherent sentencing disparity."

Because 1 kilogram of THC is equivalent to 167 kilograms of marihuana under the Guidelines, the district court found that Hurley was responsible for 242,434 kilograms of marihuana, resulting in a base offense level of 38. The district court also ruled that Hurley was subject to a four-level upward adjustment for being a leader of criminal activity involving five or more people and a three-level downward adjustment for his acceptance of personal responsibility, resulting in a total offense level of 39. This offense level, in combination with Hurley's criminal history category of II, yielded a Guidelines range of 292-365 months of imprisonment. This was reduced to the statutory maximum of 240 months. For reasons unrelated to the 1:167 ratio, the district court ruled that it would make a downward departure. The Government then sought a sentence of 144 months, but the district court imposed a sentence of 114 months, citing the harshness of the 1:167 conversion ratio as a reason for varying the sentence.

## II. ANALYSIS

Relying on the dissent in United States v. Ramos, 814 F.3d 910 (8th Cir. 2016) (Bright, J., dissenting in part), Hurley argues that marihuana, rather than THC, was the proper comparator for the synthetic cannabinoids he possessed because -- like

-6-

marihuana and unlike THC -- his product contained large quantities of plant matter. Hurley, however, did not make this argument in the district court. He instead attempted to rebut Dr. Trecki's testimony using prior publications by the DEA. Hurley maintains that he argued for marihuana rather than THC as the comparator in the district court. That is true, but he did not make the specific argument made here, and "a general objection" is "not sufficient to give the district court notice of the specific issue raised" on appeal. United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011) (citing United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009)). We therefore review only for plain error. See United States v. McDonald, 804 F.3d 497, 503 (1st Cir. 2015) ("Because [the defendant] raises the argument . . . for the first time on appeal, we review this part of his argument for plain error."). Under the plain error standard, Hurley must prove that the district court made "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights (i.e., the error made him worse off), and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." Id. (quoting United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015)).

Here, Hurley cannot show that any error was "clear or obvious." He cites only to the dissent in Ramos to support his argument that marihuana is the proper comparator because it, like

his product, contains plant matter.  But the majority in <u>Ramos</u> rejected that argument, reasoning that "while synthetic cannabinoids, such as XLR-11, are listed in Schedule I," the product mixture sold by the defendants was "not independently listed on any drug schedule."  <u>Ramos</u>, 814 F.3d at 919.  Plain error presents a "high bar," <u>Ríos-Hernández</u>, 645 F.3d at 463, and it is not obvious that the dissent in <u>Ramos</u>, rather than the majority, has the better argument.[2]

Hurley also asserts that the district court erred in applying the 1:167 ratio "even if synthetic cannabinoid product were somehow the equivalent of pure THC."  In support, he cites <u>United States</u> v. <u>Hossain</u>, No. 15-cr-14034, 2016 WL 70583 (S.D. Fla. Jan. 5, 2016).  There, the district court determined that THC was the best comparator for XLR11.  <u>Id.</u> at *4.  But it found that the 1:167 ratio had "no cognizable basis" and so varied the sentence downward using a 1:7 ratio offered by a defense expert. <u>Id.</u> at *4-6.  Following this reasoning, Hurley asserts that "the district court erred in failing to apply a one-to-seven ratio" and in not converting "[t]he stipulated 1,451 kilograms" of synthetic

---

[2]  We take no position on the outcome under a different standard of review or where a defendant makes a different argument than Hurley made.

-8-

cannabinoid product "to 10,157 kilograms [of] marijuana equivalence, for a base offense level of 34."

Hurley's argument is without merit. District courts "must start out by calculating the proper Guidelines range -- a step so critical that a calculation error will usually require resentencing." United States v. Rodríguez, 630 F.3d 39, 41 (1st Cir. 2010). After it determined that THC was the appropriate comparator, the district court correctly applied the 1:167 multiplier listed in the Guidelines, applied other credits and enhancements, and calculated the recommended sentence. The district court could not apply a 1:7 ratio, which has no foundation in the Guidelines, to calculate Hurley's recommended sentence. Hossain does not support Hurley's position; that court first calculated a total offense level using the 1:167 ratio and only then used the 1:7 ratio as one factor in calculating a downward variance under 18 U.S.C. § 3553. 2016 WL 70583, at *4-6.

We recognize, as the district court did below -- and the Government appeared to accept -- that applying the 1:167 ratio to a product that, by weight, consists primarily of inert plant matter creates an "anomaly, [because of] the severity of the way this conversion rate works." The anomaly is also reflected in the recommended Guidelines sentence of 292-365 months, which exceeds

the 240-month maximum sentence allowed under 21 U.S.C. § 841(b)(1)(C).

The "severity of the drug quantity conversion rate" led the district court "to vary [Hurley's sentence] downward to where the case more closely approximates a marijuana distribution case." The Government does not challenge that variance, and we see no error in it. We observe, however, that the Sentencing Guidelines are meant to provide "a framework or starting point to guide the exercise of the court's discretion," which "promotes uniformity and fairness in sentencing." United States v. Marchena-Silvestre, 802 F.3d 196, 200 (1st Cir. 2015) (internal quotation marks and alterations omitted) (quoting United States v. Millán-Isaac, 749 F.3d 57, 66-67 (1st Cir. 2014)). Here, the lack of either a specific conversion rate or a clear comparator may harm both uniformity and fairness. We therefore believe that the Sentencing Commission should address this issue with greater clarity and provide a rationale.

### III. CONCLUSION

For the foregoing reasons, the district court's sentence is affirmed.

**Affirmed.**