# United States Court of Appeals
## For the First Circuit

No. 13-2064

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN DELGADO-FLORES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

Barry S. Pollack, Peter J. Duffy and Pollack Solomon Duffy LLP on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division and Francisco A. Besosa-Martínez, Assistant United States attorney, on brief for appellee.

February 6, 2015

**HOWARD, Circuit Judge**. After pleading guilty to a drug conspiracy charge, appellant Jonathan Delgado-Flores was sentenced to 135 months' imprisonment. Writ small, the conspiracy involved the use of boats to smuggle drugs from Puerto Rico and the Dominican Republic to the mainland United States. Delgado now seeks to have his sentence reduced or his case remanded for a new sentencing hearing, claiming that the government materially breached a plea agreement. The parties dispute whether Delgado preserved for appeal the issue of whether the government breached the agreement. We do not resolve that issue, as the result is the same regardless of the standard of review. See United States v. Gonczy, 357 F.3d 50, 52 (1st Cir. 2004) (observing that if a proper objection is brought before the district court, breaches of plea agreements present questions of law for plenary review, but unpreserved arguments are reviewed for plain error). Finding no breach, we affirm the sentence.

Two provisions of Delgado's plea agreement are central to this appeal. First, the agreement stipulated that Delgado would be held responsible for the importation of between fifteen and fifty kilograms of cocaine. This drug quantity would, assuming a Criminal History Category I and agreed-upon adjustments yield a sentencing guideline range of 135 to 168 months. The second salient provision called for the government to recommend a sentence at the low end of the range -- 135 months -- while Delgado could

argue for the statutory minimum of 120 months, which the government, in turn, could oppose. The agreement explicitly stated that it was not binding on the court. Fed. R. Crim. P. 11(c)(1)(A), (B).

Consistent with the agreement, at sentencing defense counsel sought a 120-month sentence, arguing essentially that Delgado was less culpable than others in this particular conspiracy, and that the statutory minimum sentence was "sufficient but not greater than necessary." 18 U.S.C. § 3553. For its part, the government argued for the agreement's 135-month maximum.

Two primary issues were then discussed. First, the judge expressed concern that Delgado also had been involved in firearms sales related to the drug conspiracy and rejected any defense argument that the firearms were unrelated to the conspiracy.[1] Next, in response to defense counsel's observation that Delgado's role was limited to helping construct secret storage compartments (known as "clavos") on a vessel, the judge accepted the government's argument that the compartments were complicated and required expertise to build. For example, the following colloquy took place, referencing evidence introduced at the trial of a co-conspirator:

---

[1] At the time of sentencing, Delgado already had been convicted of a related firearms charge, for which he received a twenty-four month sentence. Because the firearms activity was relevant conduct with respect to the drug conviction, the sentences would run concurrently.

MS. GRAY [defense counsel]: Okay. Judge, but we are talking about things we were not a party to.

THE COURT: No. He's talking to me about the clavos and how sophisticated the clavos were.

MS. GRAY: Right, but we weren't there.

THE COURT: His argument is if he was involved in the clavos, the involvement in the clavos is a very sophisticated thing. It's not necessarily getting a hatchet and a hammer and saw and making a hole in the floor.

Delgado takes direct aim at comments by the prosecutor that followed soon after and drew the ire of defense counsel:

MR. CARDONA [prosecutor]: And the point being Mr. Delgado was there, because he was in charge that this would go in and out as fast as possible, because they were moving in that particular load 500 kilograms. The only reason the transaction's not completed is because the mothership did not make it to the rendezvous point. But otherwise it was going to be a major transaction.

THE COURT: The clavo would take 500 kilograms?

MR. CARDONA: Absolutely, Judge. Actually, pictures were presented to the jury --

THE COURT: I saw them.

MR. CARDONA: -- in which 150 were only one corner.

MS. GRAY: That's what I'm saying, we keep talking about the jury saw that. We were not able -- that's Sixth Amendment, he had no ability to cross-examine or see what you guys are talking about.

THE COURT: All we're talking about is a clavo.

MS. GRAY: He's talking about 500 kilos and what he saw --

THE COURT: He is responsible for at least 15 kilos, not more than 50 kilos. Not 500 kilos.

MS. GRAY: Exactly.

THE COURT: But the fact is the clavos are a sophisticated mechanism that requires -- you know, you need to be able to use these plungers, which are electrically operated, to be able to use them as locks. And, you know, the point he's making, that your colleague from the Government is making, that it's not as simple as getting a saw and a hammer and just making a hole on the bottom of a -- on the deck of a ship, and that's it, like any carpenter would do. You need more than that. That's what he's saying. He's not saying anything else.

MS. GRAY: Okay.

THE COURT: That's all.

Then the discussion returned to the plea agreement:

MR. CARDONA: Just to be clear on the record, I am recommending exactly what is in the Plea Agreement, Judge.

THE COURT: What are you recommending?

MR. CARDONA: It's 135 months, which is the recommendation in the Plea Agreement.

THE COURT: Okay.

MR. CARDONA: So there cannot be arguments later on appeal that I was recommending more.

THE COURT: You have done nothing wrong here. All you have done is explain the nature of the clavo. And the operation is something he knows and everybody knows. I mean, we're not talking about -- this is not a rudimentary hole that you would make in, as I said before,

-5-

with a little lid or something like an old man would do to put a kind of box full of money or something of the sort. That's not it. This is a very complicated mechanism that is intended to deceive even Customs people, look likes [sic] part of the boat, is made for that purpose.

MR. CARDONA: Very well.

THE COURT: Could be an inspection compartment. It could be a compartment for maintenance. It could be so many things.

Delgado asserts that the prosecutor's reference to "500 kilograms" was a not-so-subtle argument for a drug amount in excess of that specified in the plea agreement, and that the argument convinced the district court to impose the 135-month sentence rather than 120 months. Neither part of Delgado's hypothesis withstands scrutiny.

Here, the government was obligated to proceed at sentencing pursuant to a stipulated drug amount and sentencing recommendation and it did exactly that, making repeated, explicit references to both. See Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); see also United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014) (finding no breach where prosecutor "said nothing that could reasonably be construed as an indication" of support for a higher than agreed-upon offense level). Here, the

mention of the capacity of the clavos came up only in the context of the compartment's complexity and in response to defense counsel downplaying the issue. "There is no basis for concluding that the prosecutor reaffirmed a promise to the defendant out of one side of [his] mouth and tried to subvert it out of the other side." Almonte-Nuñez, 771 F.3d at 91.

Finally, we reject Delgado's argument that the government's alleged breach caused the judge to treat the stipulation as "conservative" and thus impose the maximum sentence that the agreement recommended. This claim is based on the court's following comment about the plea agreement:

> THE COURT: Right. There was a conservative, if you will, conservative drug relevant conduct stipulation. Could have been a lot more, but he was -- he signed for at least 15, less than 50 kilos, which if you think about it in the context of this kind of case, is a conservative amount.

But, contrary to Delgado's assertion, in describing the "conservative" drug amount stipulation, the sentencing judge specifically referred to the "context of this kind of case," which suggests that he was thinking far more broadly than just the prosecutor's comment. Moreover, the judge's concern over Delgado's firearms involvement also played a role in sentencing Delgado in accordance with the government's within-guidelines sentence recommendation. Against this backdrop, we find no breach of the

plea agreement, and, therefore, the judgment of the district court

is **<u>affirmed</u>**.