# United States Court of Appeals
## For the First Circuit

No. 15-1289

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL RUDIEL CRUZ-VÁZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Isabelle C. Oria-Calaf on brief for appellant.
Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, and Francisco A. Besosa-Martínez, Assistant United
States Attorney, on brief for appellee.

November 10, 2016

**HOWARD**, **Chief Judge**.  This case concerns a challenge to the sentence imposed on Angel Rudiel Cruz-Vázquez ("Cruz") for unlawful possession of a fully-automatic firearm.  Cruz challenges the reasonableness of his 36-month prison sentence.  After careful consideration, we affirm.

## I. Background

Cruz pleaded guilty to possession of a machine gun in violation of 18 U.S.C. § 922(o) after law enforcement agents, conducting a traffic stop, recovered from his car a Glock pistol modified to shoot automatically.[1]  Although agents also found a bag containing drug paraphernalia and marijuana residue in the trunk of Cruz's vehicle, this detail was omitted from the plea agreement's stipulated version of the facts, and the drug evidence also went unmentioned in the PSR.

Under the terms of the plea agreement, the parties stipulated that Cruz's Base Offense Level under U.S.S.G. § 2K2.1 was 18 and that, after applying a three-level reduction for acceptance of responsibility, his Total Offense Level was 15.  The parties estimated that this Total Offense Level, coupled with a

---

[1] Because Cruz pleaded guilty, our discussion of the facts is drawn from the plea agreement, the change-of-plea colloquy, the Pre-Sentence Investigation Report ("PSR"), and the transcript of the sentencing hearing.  See United States v. Arroyo-Maldonado, 791 F.3d 193, 196 (1st Cir. 2015).

Criminal History Category of I, would provide for a sentencing range of 18 to 24 months. The parties agreed not to seek any further guideline adjustments, departures, enhancements, reductions, or variances. Finally, the parties stipulated that while Cruz could request a sentence at the lower end of the applicable guideline range, the government reserved the right to argue for a sentence at the higher end.

Prior to the sentencing hearing, the government submitted a sentencing memorandum to the district court that, among other things, discussed the drug paraphernalia retrieved from Cruz's car and noted that "[t]he items recovered are consistent with what drug traffickers usually keep and use." When the judge mentioned the bag of drug paraphernalia at the sentencing hearing, Cruz objected, as he had not admitted to owning, possessing, or previously seeing the bag. Ultimately, the district court stated that it would not consider the bag of drug paraphernalia when determining Cruz's sentence.

The sentencing court went on to make detailed and specific findings as to each of the relevant 18 U.S.C. § 3553(a) sentencing factors. While acknowledging potentially mitigating factors emphasized by Cruz, the district court also raised concerns about Cruz's offense, saying:

> [I]n Puerto Rico . . . [w]e have a record of shootings that is greater th[a]n the ones in the City of New York and Chicago. . . . [I]t is very clear why these types of guns

> . . . have been prohibited and it is because of the potential
> to cause real and huge damages to innocent bystanders. I
> think this type of offense is having a dramatic effect on the
> community. You cannot argue that this [gun] can be used for
> personal defense . . . it is not a regular weapon, it is a
> machine gun.

The judge concluded, "I think that because of this, these factors per se will allow for a variance." The district court subsequently imposed a 36-month incarcerative sentence.

This appeal timely followed.

## II. Analysis

On appeal, Cruz alleges both that the government violated the spirit of the plea agreement by bringing the bag of drug paraphernalia to the district court's attention and that the district court abused its discretion in deviating from the guideline range and imposing a 36-month incarcerative sentence. We take these claims in turn.

### A. Breach of the Plea Agreement

Cruz argues, in effect, that the government violated the plea agreement by seeking an upward variance from the jointly-stipulated Base Offense Level. Specifically, he accuses the government of implicitly "arguing for a four level increase as prescribed in [U.S.S.G. §] 2K2.1(b)(6)(B)," which applies if a defendant used or possessed a firearm in connection with another

felony offense, by including the information about drug paraphernalia in its sentencing memorandum.

Whether the government has breached its plea agreement with Cruz presents a question of law, and our review is de novo. See United States v. Rivera-Rodriguez, 489 F.3d 48, 57 (1st Cir. 2007). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Prosecutors engaging in plea bargaining are held to "meticulous standards of both promise and performance" because such bargaining requires defendants to waive fundamental constitutional rights. United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002). We prohibit not only explicit repudiation of the government's assurances but also end-runs around those assurances. Rivera-Rodriguez, 489 F.3d at 57; United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992).

Other cases may raise difficult questions about how to reconcile the prosecution's obligation to uphold any bargain made in a plea agreement with its duty to disclose information material to the district court's sentencing determinations. See United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000). Admittedly, these responsibilities can pull in different directions. Id. This case, however, does not implicate that tension. The district court

- 5 -

expressly stated that it would disregard the drug paraphernalia in calculating Cruz's sentence. In other words, any potential tension that the prosecution may have experienced in choosing to disclose the drug-paraphernalia information to the district court had no bearing on the sentence that Cruz received.

The plea agreement expressly provided that the government could recommend a sentence at the high end of the guideline range. And this the government did. In both its sentencing memorandum and at the sentencing hearing, the government specifically asked the district court to impose "[a] sentence of twenty-four (24) months imprisonment," one at "the upper end of the applicable guideline in this case." The record makes plain that the prosecution never explicitly or implicitly sought a sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

Having unequivocally stated that it was recommending a sentence at the higher end of the guideline range, the government was free to offer reasons supporting its recommendation. See Rivera-Rodriguez, 489 F.3d at 58 (finding no error where the government told the court that there were quantities of cocaine beyond the stipulated-to amount in the plea agreement). By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate

sentence." 18 U.S.C. § 3661. Thus, the sentencing court has a right to expect that the prosecutor will share all relevant facts. See Saxena, 229 F.3d at 6 (finding no error where the prosecutor shared information about the defendant's post-plea activities with the district court).

The government's obligation to provide relevant information to a sentencing court does not dissipate merely because the government assumes an obligation to adhere to commitments made under a plea agreement. Id. at 6. Rather, the obligations coexist and must both be discharged conscientiously. Id. Here, because the prosecutor adhered to the terms of the agreement with Cruz, we see no basis to vacate his sentence based on the alleged breach.

## B. Substantive Reasonableness

Claims of sentencing error trigger a two-step inquiry: "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). As Cruz objects only to his sentence's substantive reasonableness, our review hews to the formula set out for substantive challenges.

"The substantive reasonableness of [a] sentence is [typically] reviewed for abuse of discretion, taking into account the totality of the circumstances." United States v. Zavala-

<u>Marti</u>, 715 F.3d 44, 50 (1st Cir. 2013). Although Cruz did not object in the district court, for purposes of this appeal, we will assume, favorably to him, that our review is for abuse of discretion rather than for plain error.[2] <u>Cf.</u> <u>United States</u> v. <u>Nunez</u>, ___ F.3d ___, 2016 WL 6092692, at *4 (1st Cir. Oct. 19, 2016) (assuming without deciding that review is for abuse of discretion). Nevertheless, his claim fails.

Cruz denigrates the district court's rationale because (in his view) the court inappropriately premised its sentencing determination on community-based factors, <u>viz.</u>, gun violence in Puerto Rico. Although Cruz concedes that this is a permissible consideration at sentencing, he submits that the court erred by relying on it excessively. Thus, Cruz's argument amounts to a disagreement with the district court's weighing of the different sentencing factors.

We discern no abuse of the sentencing court's broad discretion. <u>Cf.</u> <u>United States</u> v. <u>Arroyo-Maldonado</u>, 791 F.3d 193, 201 (1st Cir. 2015) (finding no error where the defendant sought to substitute his judgment for that of the sentencing court). We have repeatedly recognized that deterrence is an important factor

_____

[2] Although we have sometimes stated that a failure to object on substantive reasonableness grounds engenders plain error review on appeal, several of our recent cases have questioned the application of this standard. <u>See, e.g.</u>, <u>United States</u> v. <u>Diaz-Arroyo</u>, 797 F.3d 125, 128 (1st Cir. 2015); <u>United States</u> v. <u>Ruiz-Huertas</u>, 792 F.3d 223, 228 (1st Cir. 2015).

in the sentencing calculus.  United States v. Diaz-Arroyo, 797 F.3d 125, 129 (1st Cir. 2015).  Thus, as was done here, a sentencing court may consider the pervasiveness of similar crimes in the community when formulating its sentence.  See id.  Moreover, in determining Cruz's sentence, the district court considered all sentencing factors, adequately explained its sentence, and imposed a reasonable sentence in the totality of the circumstances.  See Arroyo-Maldonado, 791 F.3d at 201; see also Clogston, 662 F.3d at 592 ("There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes.").  Accordingly, the imposition of a 36-month sentence was not substantively unreasonable.

### III. Conclusion

For the reasons discussed above, the district court's sentence is **affirmed**.