# United States Court of Appeals
## For the First Circuit

No. 16-1493

UNITED STATES OF AMERICA,

Appellee,

v.

KENNETH R. UBILES-ROSARIO,
also known as Keneth R. Ubiles-Rosario,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Linda Backiel on brief for appellant.
Rosa E. Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

August 16, 2017

**THOMPSON**, **Circuit Judge**.  The defendant, Kenneth Ubiles-Rosario (Ubiles),[1] argues on appeal that the government breached the plea agreement and that the sentence imposed by the district court is procedurally and substantively unreasonable.  After careful consideration, we affirm.

## BACKSTORY[2]

This case was precipitated by a violent and tragic episode.  It all started when Ubiles enlisted Héctor Negrón Mercado (Negrón) to help him commit a robbery.  The pair, with Ubiles driving his car, intercepted a vehicle driven by Luis Aníbal Torres-González (Torres), a local businessman known to frequently carry large sums of money.  With Torres stopped, Ubiles left his car and approached Torres's vehicle, forced Torres to the passenger seat, and drove to a secluded area near the edge of a cliff; Negrón followed in Ubiles's car.  Ubiles forced Torres from his vehicle at gunpoint while Negrón pillaged the vehicle of Torres's money and valuables.  With the loot safely transferred to Ubiles's car,

---

[1] Although Ubiles's surname is hyphenated in the record below, his briefs on appeal omit the hyphen.

[2] In this appeal from the sentence imposed following Ubiles's guilty plea, we glean the relevant facts from the plea agreement, the undisputed sections of the presentence investigation report (PSR), and the transcripts of his change-of-plea and sentencing hearings.  See United States v. Lasalle González, 857 F.3d 46, 52 (1st Cir. 2017).

Ubiles shot Torres in the head, killing him.[3]  Ubiles and Negrón then fled the scene in the two vehicles, abandoning Torres's car along the way.

A federal grand jury indicted Ubiles and Negrón on one count of carjacking by shooting and killing Torres and one count of discharging a firearm during a crime of violence.  Ubiles agreed to plead guilty to the carjacking count in exchange for the prosecution's dismissal of the firearm count.

Under the agreement, the government and Ubiles stipulated to use a total offense level of 39 for purposes of their sentencing recommendations, even though both recognized that the correct total offense level would have been 40 absent their agreement.  The parties also agreed to recommend to the district court a sentence between 262 and 300 months, with Ubiles arguing for a sentence at the low end of that range and the government "reserv[ing] the right to allocute for a term of imprisonment up to three hundred (300) months."  Finally, the parties agreed that neither side would seek a "variant sentence under 18 U.S.C. § 3553(a)" or any "further adjustments or departures to [Ubiles's] total adjusted offense level."

Notwithstanding the agreement between the parties with respect to sentencing recommendations, Ubiles acknowledged in the

_____

[3] The force of the blast caused the body to fall over the cliff edge, where it was discovered later that day.

plea agreement that "the sentence will be left entirely to the sound discretion of the" district court and that the statutory maximum penalty was life imprisonment. Additionally, the government "reserve[d] the right to carry out its responsibilities under guidelines sentencing." In particular, the plea agreement provided that

> the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a [PSR]; (b) to dispute sentencing factors or facts material to sentencing; [and] (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

During the change-of-plea colloquy, the magistrate judge informed Ubiles that the district-court "[j]udge does not have to follow the[] [sentencing] recommendations [in the plea agreement] and retains authority to impose any sentence up to the maximum allowed by law." Ubiles indicated that he understood.

In its sentencing memorandum, the government reiterated that it "reserved the right [under the plea agreement] to ask for a sentence of 300 months of incarceration." To that end, the government then identified the pertinent § 3553(a) factors that, in its view, "[w]arrant[ed] a [s]entence of 300 months of [i]ncarceration." In particular, it noted the prevalence of gun violence in Puerto Rico and the premediated, deliberate, and violent nature of the offense. It explained why the crime

- 4 -

"require[d] punishment of <u>no less than</u> 300 months." (Emphasis added.) Finally, it concluded by "recommend[ing] that th[e] [c]ourt sentence the defendant to serve a term of 300 months of imprisonment." Ubiles did not object to any aspect of the government's memorandum at any point between the date on which it was filed and the sentencing hearing, which was held almost one year later.

At the sentencing hearing, Ubiles turned to face Torres's family, expressed his remorse, and asked for their forgiveness. The prosecutor told the district court that the government's recommendation of 300 months appropriately balanced Ubiles's acceptance of responsibility and expression of remorse with the severity of the crime. Torres's wife and one of his sons then addressed the court. Torres's son "ask[ed] for all the weight of the law and justice for our father." After the family members spoke, the prosecutor told the district court: "We hope that Your Honor will consider our recommendation and sentence the defendant to 300 months."

In pronouncing sentence, the district court stated that it had "reviewed the applicable advisory guideline calculations" and "ha[d] considered all sentencing factors in 18 U.S. Code, Section 3553(a)." The district court determined that the parties' stipulation to use a total offense level of 39, instead of 40, was "without any justification." Although the court explicitly

considered Ubiles's age, his two young daughters, his employment history, his diagnosis before the crime of major depressive disorder, his lack of prior criminal history, and his history of substance abuse, the court emphasized "the grave nature of this offense and the circumstances, which reflect extreme cruelty on the part of the defendant Ubiles towards the victim." The court also stressed the need "to effectively provide deterrence and to protect the public from further crimes by this defendant, and also to provide just punishment." For these reasons, the court sentenced Ubiles to a term of 365 months of imprisonment, which the court deemed "sufficient but not greater than necessary to meet [the] objectives of punishment and of deterrence in this case."

After the district court imposed sentence, Ubiles objected to the court's refusal to follow the parties' sentencing recommendations. Ubiles also explained the reason why the parties selected a total offense level of 39 instead of 40: By pleading guilty, Ubiles had waived several important constitutional rights and had spared Torres's family of the ordeal and anguish of sitting through Ubiles's trial. The district court reiterated that it deemed a total offense level of 40 to be appropriate.

After this exchange between defense counsel and the district court, the prosecutor interjected that "[t]he Government stands by, obviously, its recommendation of 300 months." After

observing that the PSR also used a total offense level of 40, rather than 39, the prosecutor clarified: "Obviously, we're not -- we stand by our plea agreement, Your Honor.  I'm not trying in any way to breach that plea agreement.  I just wanted that to be clear for the record."

Dissatisfied with the prosecutor's effort to defend the plea agreement, Ubiles stated that "the prosecution is not following, is not advocating for that sentence and is in fact breaching the plea agreement."  The prosecutor responded: "[T]he agreement to stipulate to a level 39 was all done by me.  We stand by that. . . . We've asked for 300 [months], we believe that's an appropriate sentence."  Ubiles shot back that "the prosecutor has not in any way advocated for the 300 months and is backing away from the plea agreement."  The prosecutor once again disagreed:

> I take issue with that, I have said several times throughout the course of this sentence that I'm asking the Court to impose a 300-month sentence; to say otherwise is just dishonest.  I've said here now, after this Court has imposed sentence, three times, that that is our recommendation, we stand by it.

Ubiles filed a motion for reconsideration of his sentence, arguing that the district court "did not explain the reasons for imposing the highest permissible sentence within the higher Guidelines range" and that a sentence within the range recommended by the parties would have been more appropriate than the sentence imposed by the district court.  With the motion for

- 7 -

reconsideration still pending, Ubiles timely appealed from the district court's imposition of sentence.

The court denied the motion for reconsideration in an order that reiterated much of the court's analysis at the sentencing hearing. The court also considered Ubiles's expression of remorse at sentencing, but the court stated that it perceived "shallow sincerity" as Ubiles spoke.[4]

**ANALYSIS**

Ubiles's arguments on appeal can be grouped into two categories.[5] First, he argues that the government breached the plea agreement, both at the sentencing hearing and earlier in the government's sentencing memorandum. Next, he argues that the

---

[4] Several months later, Negrón, who pled guilty to one count of aiding and abetting carjacking resulting in death by a firearm, was sentenced by the same district-court judge to 144 months of imprisonment. Ubiles seizes on the discrepancy between his sentence and Negrón's to support his argument on appeal that the district court failed to adequately explain the reasons for giving him a 365-month sentence, and we'll get to that argument in a moment.

[5] Like most plea agreements, Ubiles's had a waiver-of-appeal provision. But, because the sentence imposed by the district court was in excess of the sentencing range set forth in the agreement, Ubiles was not (to use the lingo of the waiver-of-appeal provision) "sentenced in accordance with the terms, recommendations, and conditions set forth in the Sentence Recommendation provisions of th[e] Plea Agreement." Therefore, as the government acknowledges, this appeal is not barred by the waiver-of-appeal provision of the plea agreement. See United States v. Cortés-Medina, 819 F.3d 566, 568-69 (1st Cir. 2016).

district court imposed a sentence that is both procedurally and substantively unreasonable.  We address each category in turn.

## A.    Breach of the Plea Agreement

Ubiles's principal argument on appeal is that the government breached the plea agreement by paying lip service to its obligation to recommend a sentence no higher than 300 months. Because "[a] defendant who enters a plea agreement waives a panoply of constitutional rights . . . , we hold prosecutors to the most meticulous standards of both promise and performance" in the plea-agreement context.  United States v. Marín-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017) (internal quotation marks omitted) (quoting United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014)).  These strict standards "require more than lip service to, or technical compliance with, the terms of a plea agreement."  Id. (quoting Almonte-Nuñez, 771 F.3d at 89); see also id. ("[W]e frown on technical compliance that undercuts the substance of the deal."); United States v. Quiñones-Meléndez, 791 F.3d 201, 204 (1st Cir. 2015) ("The government is barred not only from 'explicit repudiation of the government's assurances' contained in a plea agreement but also — 'in the interest of fairness' — from undertaking 'end-runs around them.'" (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 57 (1st Cir. 2007))).  Instead, "a defendant is entitled not only to the government's 'technical compliance' with its stipulations but also to the 'benefit of the

bargain' struck in the plea deal and to the good faith of the prosecutor."  United States v. Matos-Quiñones, 456 F.3d 14, 24 (1st Cir. 2006) (citation omitted) (quoting United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995)); see also United States v. Frazier, 340 F.3d 5, 11 (1st Cir. 2003) ("[A]s in all contracts, plea agreements are accompanied by an implied obligation of good faith and fair dealing" (quoting United States v. Ahn, 231 F.3d 26, 35-36 (D.C. Cir. 2000))).

There is, of course, "[n]o magic formula" for assessing whether a prosecutor has complied with a sentencing recommendation in a plea agreement.  United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004).  In the end, we examine the totality of the circumstances, Marín-Echeverri, 846 F.3d at 478, to determine whether "the prosecutor's 'overall conduct [is] . . . reasonably consistent with making such a recommendation, rather than the reverse,'" Gonczy, 357 F.3d at 54 (quoting United States v. Canada, 960 F.2d 263, 268 (1st Cir. 1992)).

But that's not the complete picture.  Although prosecutors undeniably have "a duty to carry out the obligations [the government] has undertaken [in a plea agreement] in both letter and spirit," they also, "as officers of the court, remain bound by their corollary duty to provide full and accurate information about the offense and the offender to the sentencing court."  Almonte-Nuñez, 771 F.3d at 86.  And "a plea agreement may

- 10 -

not abridge" the "solemn obligation to provide relevant information to the sentencing court." Id. at 90; see also United States v. Miranda-Martinez, 790 F.3d 270, 274 (1st Cir. 2015). This court has recognized that these twin obligations can sometimes "pull in different directions." United States v. Cruz-Vázquez, 841 F.3d 546, 549 (1st Cir. 2016); see also United States v. Gall, 829 F.3d 64, 73 (1st Cir. 2016) (characterizing these two obligations as "competing" in the circumstances of that case); Almonte-Nuñez, 771 F.3d at 86 ("[T]hese dual obligations sometimes require prosecutors to walk a fine line.").

In resolving this tension, "there is a material difference between answering questions asked by a sentencing court or bringing facts to the court's attention," on the one hand, and, on the other, engaging in conduct that violates the terms of the plea agreement, by, for example, "affirmatively supporting an adjustment" to the guideline range when the plea agreement "obligate[s] the government to refrain from arguing further guideline adjustments." Almonte-Nuñez, 771 F.3d at 90 (internal quotations omitted); see also Miranda-Martinez, 790 F.3d at 274 (explaining that, on the one hand, "'[t]he mere furnishing' of facts concerning the background, character, and conduct of the defendant 'gives us little pause'" (quoting United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000)), while, "[o]n the other hand, we have acknowledged that certain factual 'omission[s],

- 11 -

helpful to the defendant,' may be 'an implicit part of the bargain' in a plea agreement" (quoting United States v. Yeje-Cabrera, 430 F.3d 1, 28 (1st Cir. 2005))). We look to "[t]he precise terms of the plea agreement" at issue to "help resolve these competing tugs." Miranda-Martinez, 790 F.3d at 275.

Within this framework, Ubiles identifies three actions of the government that, in his view, collectively amount to a breach of the plea agreement: (1) the prosecutor's refusal to explain or defend the parties' agreement to use an adjusted total offense level of 39, instead of 40, when the district court deemed that aspect of the agreement to be "without any justification"; (2) the "aggravating and extraneous factors" relied upon by the government; and (3) the request in the sentencing memorandum that the district court impose a sentence of "no less than 300 months."

### 1.  Standard of Review

At the outset, the parties dispute the governing standard of review. Emphasizing that he objected at the sentencing hearing to what he perceived to be the government's breach of the plea agreement, Ubiles insists that we review de novo whether the prosecutor breached the plea agreement. See Cruz-Vázquez, 841 F.3d at 548 ("Whether the government has breached its plea agreement with [a defendant] presents a question of law, and our review is de novo."). The government stakes out a contrary position. Although it concedes that "[t]his [c]ourt has not

- 12 -

explicitly determined [precisely] when a defendant must raise a claim that the government is in breach of a plea agreement in order to sufficiently preserve the issue for appeal," it argues, citing our case law from the closing-argument context, that Ubiles failed to preserve the issue because he "did not contemporaneously object to the government's allocution or sentence recommendation at the time of the prosecutor's remarks nor prior to the district court imposing sentence," such that the issue must be assessed under the plain-error standard.  See United States v. Betancourt-Pérez, 833 F.3d 18, 23-24 (1st Cir. 2016) (subjecting unpreserved claim that government breached plea agreement to plain-error review).  Ubiles counters that it makes no sense to impart the preservation standard from the closing-argument context to the very different setting of the government's breach of a plea agreement at a sentencing hearing.

Wholly apart from this particular preservation tussle, the government also argues that Ubiles failed to preserve any allegation of breach based on the government's sentencing memorandum because Ubiles did not object to any aspect of the memorandum either before or during the sentencing hearing.  But Ubiles has a rejoinder to this argument, too:  According to Ubiles, "[o]bjection to a prosecution sentencing memorandum has never been required and would make no sense," evidently because, in his view, (1) it is "unwise to anticipatorily antagonize the prosecutor,"

(2) "[p]rior to the hearing, one must count on the good faith of the prosecution to perform with some degree of enthusiasm at the hearing," and (3) the government's "failure to support a [sentencing] recommendation does not occur in a single instant, but is cumulative."

We need not, however, enter this fray. The government maintains that, even under de novo review, Ubiles's claim fails because the government did not breach the plea agreement. We agree and therefore assume, favorably to Ubiles, that he preserved all aspects of his claim that the government breached the plea agreement.[6] See United States v. Delgado-Flores, 777 F.3d 529, 529 (1st Cir. 2015) (employing this approach).

## 2. Existence of Breach

Ubiles first complains of the government's conduct at the sentencing hearing. He argues that the prosecutor failed to defend the agreed-upon sentencing range — by, for example, noting Ubiles's strong prospects for rehabilitation or the benefits to the government and Torres's family that flowed from Ubiles's decision to plead guilty — when the district court rejected the parties' agreement to a lower total offense level than the level called for by the guidelines. Relying on Gonczy, Ubiles contends that, although the prosecutor reiterated the government's 300-

_____

[6] In charting this course, we express no opinion on the parties' preservation arguments.

- 14 -

month recommendation several times at the sentencing hearing, "no fair reading of the prosecutor's argument to the court would lead an impartial observer to think that [he] thought [300 months] was an adequate sentence." (Alterations in original) (quoting Gonczy, 357 F.3d at 54). He also insists that the prosecutor spent most of his time at the sentencing hearing emphasizing Torres's status in the community, the effect the crime had on the Torres family, the "completely senseless and selfish" nature of the crime, and Ubiles's actions immediately after the crime. We disagree.

The government's conduct in Gonczy is very different from what the prosecutor did in this case. Under the plea agreement in Gonczy, the government agreed to recommend a sentence at the low end of the guidelines sentencing range (GSR) calculated by the district court. 357 F.3d at 51. At the sentencing hearing, after the court calculated a GSR of 70 to 87 months, id., the prosecutor began her argument by recommending, consistent with the plea agreement, a sentence of 70 months, id. at 53. But the prosecutor never returned to that recommendation during the remainder of her argument. See id. at 54. Instead, as we explained, "[t]he initial recommendation . . . was undercut, if not eviscerated, by the [prosecutor]'s substantive argument to the district court." Id. After characterizing the defendant as the "brains behind th[e fraudulent] operation" and explaining how the fraud "ruined many lives," id. at 53, the prosecutor's sentencing

argument culminated with the statement that "the defendant at a minimum deserves what the guidelines provide for and those are his just deserts [sic]," id. at 54. Therefore, contrary to its obligation under the plea agreement to recommend a sentence at the low end of the GSR, the prosecutor argued that the entire GSR — which spanned 17 months — was the "minimum" amount of time for which the defendant should be sentenced. Id. We agreed with the district court's assessment of the prosecutor's argument: "that 'no fair reading of [the prosecutor's] argument to the [c]ourt would lead an impartial observer to think that [she] thought 70 months' was an adequate sentence.'" Id. We concluded that the prosecutor breached the plea agreement because, "[w]hile paying lip service to a term of 70 months' imprisonment, the [prosecutor] substantively argued for a sentence at the higher end of the guidelines." Id.

Ubiles's case, by contrast, did not involve a lone recommendation consistent with the plea agreement followed by argument inconsistent with that recommendation, see id. at 53-54, or, worse yet, a sentencing argument in which the prosecutor did not even make the recommendation required by the plea agreement, see Canada, 960 F.2d at 268-69 (finding breach of plea agreement where prosecutor, despite acknowledging government's promise to recommend only 36 months of incarceration, "never herself affirmatively recommended a 36 month sentence and her comments

- 16 -

seemed to undercut such a recommendation"; prosecutor's "references to the agreement were grudging and apologetic," and she "inject[ed] material reservations about the agreement to which the government ha[d] committed itself"). Instead, in both the sentencing memorandum and several times at the sentencing hearing, the prosecutor explicitly recommended, consistent with the plea agreement, a 300-month sentence. Cf. Rivera-Rodríguez, 489 F.3d at 57 (distinguishing Canada because government asked court to impose sentence it was entitled to recommend under plea agreement "not once, but twice during the course of its argument").

After the district court rejected the parties' agreed-upon total offense level of 39 as "without any justification" and the back-and-forth discussion that ensued on that subject between the court and defense counsel, the prosecutor, while acknowledging that the PSR calculated a total offense level of 40, reiterated that "[t]he Government stands by, obviously, its recommendation of 300 months " and further clarified that "we stand by our plea agreement, Your Honor. I'm not trying in any way to breach that plea agreement." Cf. Gall, 829 F.3d at 73 (concluding that there was no breach of plea agreement where prosecutor, while acknowledging that guidelines calculations in PSR — which were different than parties' agreed-upon calculations — were correct, nonetheless recommended a sentence reflecting calculations in plea

agreement).[7]   Finally, when Ubiles protested, for the first time

in the case, that the prosecutor was breaching the plea agreement,

the prosecutor vigorously maintained (not once, but twice) that

the government was standing by its recommendation of 300 months.

In short, this case is very different from Gonczy.   The

government stuck by its obligation under the plea agreement,

recommending the 300-month sentence that it was entitled to

recommend under the agreement early, often, and throughout the

sentencing in this case.   And it "never explicitly or implicitly

sought" a sentence greater than 300 months.   Cruz-Vázquez, 841

F.3d at 549.

Ubiles's gripe with the government's decision to

emphasize certain factors at the sentencing hearing — Torres's

status in the community, the impact the crime had on Torres's

family, the nature of the crime, and Ubiles's actions immediately

---

[7] In a footnote in his opening brief, Ubiles asserts that "one must count on the good faith of the prosecution to perform with some degree of enthusiasm at the hearing."  To the extent Ubiles intended for this sentence to argue that the government in this case breached the plea agreement because the prosecutor did not perform with sufficient enthusiasm, any such argument is both (1) not properly before us for lack of development, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), and (2) meritless, see Almonte-Nuñez, 771 F.3d at 91 (explaining that prosecutor "was not required to be effusive in refusing to support the adjustment"); Canada, 960 F.2d at 270 ("[A] prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm . . . .").

after committing the murder — is equally unavailing. The government properly discussed the actions Ubiles took immediately after the crime — going to the mall and having lunch — to rebut Ubiles's expression of remorse at the sentencing hearing; although the prosecutor "ha[d] no doubt the defendant is remorseful," he stated that it was "important" for the court to "consider his remorse on th[e] day" of the crime. See Almonte-Nuñez, 771 F.3d at 87, 90 (holding that government did not breach plea agreement where, although government was not requesting sentencing enhancement for restraining victim, rebutted defense counsel's assertion that discovery provided by government did not support restraint enhancement by arguing that "the victim impact statement furnished a factual basis for the two-level restraint enhancement"; prosecutor's statement was "plainly made . . . to correct what the [prosecutor] reasonably viewed as a misstatement of fact by defense counsel"); see also Delgado-Flores, 777 F.3d at 531 (concluding that prosecutor did not breach plea agreement when he discussed evidence that rebutted defense counsel's effort to minimize defendant's role).

Nor is the government's sentencing-hearing reference to the other factors troubling. "Having unequivocally [and repeatedly] stated that it was recommending a sentence" of 300 months, "the government was free to offer reasons supporting its recommendation," and that's precisely what the government did

here.  Cruz-Vázquez, 841 F.3d at 549; see also Rivera-Rodríguez, 489 F.3d at 58.  Our decision in Almonte-Nuñez is illustrative.  At the sentencing hearing in that case, the government: (1) characterized the robbery victim as "a defenseless female, 70 year old woman, attacked in a way that nobody should have to face . . . [w]hen she [was] sleeping, in a vulnerable state"; (2) referenced "the vicious way that [the defendant] committed the crime, when he assaulted [the victim] with no provocation"; and (3) chronicled the "severe bodily injury" that the victim suffered as a result of the crime.  771 F.3d at 90.  Along the way, the prosecutor repeatedly affirmed that the government was "standing by the plea agreement."  Id.  We rejected the defendant's contention that the government's sentencing argument amounted to a breach of the plea agreement:

> The Agreement allowed the prosecutor to seek the upper end of the GSR contemplated by the Agreement, and the [prosecutor] was within fair territory in emphasizing facts that made a sentence at the low end of that GSR inappropriate.  The defendant admitted to committing a heinous crime resulting in horrific injuries, and nothing contained in the Agreement entitled him to have the government sugarcoat the facts.

Id. at 91 (citation omitted).

So it is here.  The government did not breach the plea agreement by identifying evidence at the sentencing hearing that,

in its view, supported the 300-month sentence that it was requesting the district court to impose.[8]

In a somewhat related vein, Ubiles next argues that the government breached the plea agreement by "advanc[ing] aggravating factors" in its sentencing memorandum. In particular, Ubiles highlights the following factors identified in the memorandum: (1) statements contained in the PSR that Ubiles made to the probation officer about Ubiles's role as the "mastermind" of the offense; (2) statements not contained in the PSR or in the statement of facts accompanying the plea agreement that Negrón made to law-enforcement officers about what he and Ubiles did immediately after the crime; and (3) the prevalence of gun violence in Puerto Rico. Ubiles argues that these factors were not consistent with the section of the plea agreement in which the government reserved the right "to dispute sentencing factors or facts material to sentencing" because that provision of the agreement did not permit

_____

[8] Ubiles also appears to criticize the prosecutor for allowing Torres's family to speak. But the prosecutor did not breach the plea agreement by allowing Torres's family to address the court, something that he was legally required to do. See United States v. Aguirre-González, 597 F.3d 46, 51 (1st Cir. 2010) (explaining that the Crime Victims' Rights Act "enshrines a panoply of crime victims' 'rights,' including rights 'to be reasonably heard at any public proceeding in the district court involving . . . sentencing,'" "obligates district courts in criminal proceedings to 'ensure that the crime victim is afforded [such] rights' and requires government prosecutors to 'make their best efforts to see that crime victims are notified of, and accorded, the[ir] rights.'" (alteration in original) (quoting 18 U.S.C. § 3771(a)(4), (b)(1), (c)(1))).

the government "to bring any and all relevant facts or argument <u>to the Court's attention</u> at or before sentencing." Instead, Ubiles contends that these aggravating factors were "calculated to inspire an emotional response for retribution" and "to urge an upward variance[] from established Guidelines levels." We reject this argument.

For starters, Ubiles misapprehends the plea agreement. We interpret plea agreements "in accordance with traditional principles of contract law." <u>Marín-Echeverri</u>, 846 F.3d at 477-78 (quoting <u>United States</u> v. <u>Marchena-Silvestre</u>, 846 F.3d 196, 202 (1st Cir. 2015)). Contrary to Ubiles's assertion, the unambiguous language of the reservation-of-rights paragraph in the plea agreement does not prevent the government from bringing relevant facts to the district court's attention. Although one provision of this paragraph discusses the government's right "to bring its version of the facts of this case . . . <u>to the attention of the probation office</u>" (emphasis added), the other provisions of this paragraph are not so limited. In particular, the government reserved, without qualification, its "right to carry out its responsibilities under guidelines sentencing" and its right "to dispute sentencing factors or facts material to sentencing." Therefore, the plea agreement did not bar the government from bringing what it viewed as the relevant facts to the district court's attention in connection with its sentence recommendation.

This interpretation of the plea agreement recognizes that, "[b]y statute, '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'" Cruz-Vázquez, 841 F.3d at 549 (quoting 18 U.S.C. § 3661); see Almonte-Nuñez, 771 F.3d at 86 ("We repeatedly have emphasized that prosecutors have a concurrent and equally solemn obligation to provide relevant information to the sentencing court and that a plea agreement may not abridge that obligation.").

And there was nothing sinister about the government's decision to highlight certain facts and factors in its sentencing memorandum.[9] As was true at the sentencing hearing, the government's reference to these sentencing factors was firmly grounded in its recommendation that the court impose a 300-month sentence, and the government was permitted to marshal the facts and factors that, in its view, warranted the recommended sentence. See Cruz-Vázquez, 841 F.3d at 549; Almonte-Nuñez, 771 F.3d at 91;

---

[9] Ubiles asserts, in passing, that some of the facts contained in the government's sentencing memorandum were "not disclosed in the PSR and not part of the Statement of Facts" accompanying the plea agreement. However, apart from his meritless argument that the terms of the plea agreement prohibited the government from bringing these facts to the district court's attention, Ubiles makes no attempt to develop an argument that the government's reliance on facts not disclosed in the PSR was somehow improper. Therefore, we need not consider any such undeveloped argument. See Zannino, 895 F.2d at 17.

_Gonczy_, 357 F.3d at 53 ("The government's review of the facts of the case and of Gonczy's character cannot constitute a breach of the plea agreement as they were relevant to the court's imposition of the sentence; no limitation can be placed, by agreement or otherwise, on this information."). Therefore, this aspect of the sentencing memorandum was fully consistent with both the terms of the plea agreement and the government's separate "duty to disclose information material to the district court's sentencing determinations." _Cruz-Vázquez_, 841 F.3d at 548-49.

Finally, Ubiles's reliance on the "no less than 300 months" language of the government's sentencing memorandum cannot carry the day.[10] Initially, we note that, although Ubiles now challenges this phrase as a breach of the plea agreement, he voiced no complaint relating to this phrase either at the sentencing hearing or in the almost one year that elapsed between the filing of the memorandum and the sentencing hearing. _Cf._ _Miranda-Martinez_, 790 F.3d at 275 (explaining that absence of objection from defense counsel "was not a mistake by counsel in the face of plain breach, but was instead a recognition by competent counsel

_____

[10] Throughout his opening and reply briefs, Ubiles insinuates that the prosecutor requested a sentence of "at least" 300 months. Ubiles has not pointed us to where in the record the prosecutor requested a sentence of "at least" 300 months, and our independent review of the record has revealed no support for that insinuation.

that the agreement was not being breached at all").[11]  Additionally, the phrase "not less than 300 months" is not literally inconsistent with the prosecution's plea-agreement obligation to recommend a sentence up to 300 months: Read literally, it suggests that anything less than 300 months — the sentence that the government twice recommended in the sentencing memorandum — was not appropriate.  Cf. Almonte-Nuñez, 771 F.3d at 91 (explaining, where plea agreement allowed government to seek sentence at high end of GSR, that prosecutor "was within fair territory in emphasizing facts that made a sentence at the low end of that GSR inappropriate").  Finally, even if this isolated phrase was somewhat inartful, the government made crystal clear at sentencing that it was standing by the agreement and recommending a 300-month sentence; the government repeatedly reiterated this position, even when the district court suggested that the parties' agreement on a total offense level of 39 was not justified, see Saxena, 229 F.3d at 7 (explaining, in finding that government did not breach plea agreement:  "Perhaps most important, [the prosecutor] resolutely stood by the bottom-line recommendation that the government had committed to make . . . even after the court had

---

[11] In making this observation, we by no means backtrack from our decision to assume, favorably to Ubiles, that all of his breach arguments have been preserved.  See supra Part A.1.  We simply juxtapose Ubiles's current claim that three words in the government's sentencing memorandum constitute a breach of the plea agreement with his continued silence on that point below.

indicated that it would not" follow the parties' sentencing recommendations), and the prosecutor vehemently denied defense counsel's charge that the government was breaching the plea agreement. Viewing the totality of the circumstances, as we are required to do, see Marín-Echeverri, 846 F.3d at 478, we do not perceive the government's use of this phrase to be a breach of the plea agreement.

* * *

In sum, the plea agreement permitted the government to recommend a 300-month sentence. The government did so, in both its sentencing memorandum and at the sentencing hearing, and it never wavered from that obligation, explicitly requesting a 300-month sentence eight times. And, in recommending this sentence, the government was entitled to explain the reasons why its recommended sentence was appropriate. In the end, the government never explicitly or implicitly sought a sentence higher than 300 months. Therefore, it did not breach the plea agreement.

### B. The Sentence

Ubiles next contends that the sentence imposed by the district court is both procedurally and substantively unreasonable. We review the reasonableness of a sentence in a bifurcated fashion, first assessing claims of procedural unreasonableness before turning to plaints of substantive unreasonableness. See Lasalle González, 857 F.3d at 61; United

States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016). Generally speaking, we "review both procedural and substantive reasonableness under a deferential abuse-of-discretion standard." Arsenault, 833 F.3d at 28. In the procedural-reasonableness context, we apply the familiar abuse-of-discretion rubric in a "multifaceted" manner: "'we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion.'" Id. (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015)).

This deferential manner of reviewing claims of procedural reasonableness is altered, however, where the defendant fails to preserve the claim of error in the district court; in this circumstance, the daunting plain-error standard of review supplants the usual abuse-of-discretion rubric.[12] See Arsenault, 833 F.3d at 28; Vargas-García, 794 F.3d at 166.[13] With this

---

[12] To surmount the high plain-error hurdle, a defendant "must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Lasalle González, 857 F.3d at 62 (quoting United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015)).

[13] The consequence of a failure to lodge a substantive-reasonableness objection in the district court is less clear. "[T]he applicable standard of review for an unpreserved, substantive reasonableness challenge is 'murky.'" Arsenault, 833 F.3d at 29 (quoting United States v. Pérez, 819 F.3d 541, 547 (1st

framework firmly in place, we turn to Ubiles's sentencing arguments.

## 1. Procedural Reasonableness

On the procedural-reasonableness front, Ubiles claims that the district court committed three procedural errors: (1) improperly treating the guidelines as mandatory; (2) failing to comply with the requirement of 18 U.S.C. § 3553(c)(1) that the court explain its chosen sentence in open court; and (3) failing to adequately explain the reasoning behind its chosen sentence of 365 months of imprisonment, especially given the fact that Negrón subsequently received a sentence of only 144 months.[14] We address each claim of procedural error in turn.

---

Cir. 2016)); see also Ruiz-Huertas, 792 F.3d at 228 (noting that it is unclear whether an unpreserved substantive reasonableness claim should be reviewed for abuse of discretion or plain error). In this case, both parties urge us to definitively decide the question of which standard of review applies, and, unsurprisingly, the parties stake out competing positions. We decline this invitation, however. Because Ubiles's substantive-reasonableness challenge fails under the more defendant-friendly abuse-of-discretion rubric, we apply that standard, leaving for another day the task of definitively resolving this lingering question. See, e.g., Arsenault, 833 F.3d at 29 (steering this course).

[14] Ubiles appears to offer his second and third claims as distinct procedural errors, so we shall treat them separately. Additionally, the parties squabble over whether Ubiles's motion for reconsideration — filed the day after sentence was imposed — was sufficient to preserve these two claims of procedural error in the absence of an objection during the sentencing hearing. Because it makes no difference to the outcome, we assume, favorably to Ubiles, that he preserved these claims. See United States v. Vazquez-Martinez, 812 F.3d 18, 25 (1st Cir. 2016) (employing this approach).

In his first claim of procedural error, Ubiles argues that the district court treated the guidelines as mandatory. See Gall v. United States, 552 U.S. 38, 51 (2007) (characterizing such an error as procedural error). The record demonstrates definitively that no such error occurred. Before pronouncing sentence, the district court stated that it had "reviewed the applicable advisory guideline calculations." (Emphasis added.) See United States v. Ofray-Campos, 534 F.3d 1, 38 (1st Cir. 2008) (rejecting claim that district court treated guidelines as mandatory where court stated that it was "using the guidelines as advisory"; "There is no doubt, therefore, that the district court imposed the sentence under the correct understanding that the sentencing guidelines are advisory, not mandatory").

Entirely ignoring this passage of the sentencing-hearing transcript, Ubiles contends that the court's rejection of the parties' agreed-upon total offense level as without justification "betray[ed] continuing reflexive reliance upon pre-Booker law and practice common in the District of Puerto Rico." But, as Ubiles acknowledged in the plea agreement, at his change-of-plea colloquy, and on appeal, the district court was not bound by the parties' agreement, and the mere fact that the court declined to follow the agreed-upon total offense level (and instead used the concededly correct total offense level in its guidelines

calculations) does not erase the court's explicit acknowledgement of the advisory nature of the guidelines.

Ubiles next argues that the district court did not comply with 18 U.S.C. § 3553(c)(1) because it failed to explain, in open court, the reasons for the sentence it imposed. "A sentencing court must 'state in open court the reasons for its imposition of the particular sentence.'" Lasalle González, 857 F.3d at 62 (quoting § 3553(c)). Section 3553(c) requires an in-court adequate explanation for the imposed sentence "to allow for meaningful appellate review and to promote the perception of fair sentencing." Vargas-García, 794 F.3d at 166 (quoting Gall, 552 U.S. at 50).

Contrary to Ubiles's claim, however, the district court did explain its reasons for the sentence in open court during the sentencing hearing. The court's subsequent order denying Ubiles's motion for reconsideration — which Ubiles appears to view as the first articulation of the district court's reasons — largely repeats what the district court said at the sentencing hearing. The only arguably "new" reason offered in the order was the court's assessment of Ubiles's "shallow sincerity" when he apologized to Torres's family.[15] Therefore, because the district court stated

---

[15] A brief detour on the district court's "shallow sincerity" assessment: In his opening brief, Ubiles, while acknowledging that this court is not in the business of second-guessing credibility assessments made by a sentencing judge, notes that the district court was not facing Ubiles when he spoke to the family and that the prosecutor, who evidently was facing him, expressed

its reasons in open court as required by § 3553(c), we reject Ubiles's argument to the contrary.

The last arrow in Ubiles's procedural-error quiver is his contention that the district court's explanation for its 365-month sentence was inadequate. According to Ubiles, the district court failed to consider all of the § 3553(a) factors. Ubiles also thinks that the disparity between the 144-month sentence that Negrón received and the 365-month sentence imposed on Ubiles makes the district court's brief explanation of its reasons all the more suspect.

Contrary to Ubiles's protestations, the district court's explanation easily passes muster. A sentencing court "need not be 'precise to the point of pedantry'" in its explanation; instead, the "'court need only identify the main factors behind its decision.'" Lasalle González, 857 F.3d at 62-63 (quoting Vargas-García, 794 F.3d at 166). The court's explanation in this case meets this benchmark. For starters, the court explicitly stated

---

no doubt about the sincerity of Ubiles's remorse. He goes a step further in his reply brief, noting that this court can set aside a district court's credibility findings in some circumstances and arguing that, because Ubiles repeated his apology multiple times, "it has the ring of sincerity." But "[i]t is for the sentencing court to assess the credibility of [a] witness, and it is for the appellate court to defer to that assessment unless it is clearly erroneous." United States v. Ortiz-Torres, 449 F.3d 61, 78 (1st Cir. 2006). Ubiles falls far short of establishing that the district court's assessment of his sincerity was clearly erroneous. Thus, to the extent Ubiles means to challenge this credibility assessment, we are unmoved.

that it had "considered all sentencing factors in" § 3553(a), and "such a statement is entitled to some weight." Arsenault, 833 F.3d at 32 (quoting Ruiz-Huertas, 792 F.3d at 226-27). And it expressly weighed several of these factors on the record at the sentencing hearing.

The court considered the defendant's age, education and employment history, recent diagnosis of mental illness, lack of criminal record, and his two young daughters. See 18 U.S.C. § 3553(a)(1) (identifying as a sentencing factor "the history and characteristics of the defendant"). The district court also considered "the nature and circumstances of the offense," id., in detail. In particular, the district court characterized the nature of the offense as "grave," and explained that the circumstances "reflect[ed] extreme cruelty on the part of the defendant Ubiles towards the victim." Additionally, the court stressed the need "to effectively provide deterrence and to protect the public from further crimes by this defendant, and also to provide just punishment." See id. § 3553(a)(2)(A)-(C) (specifying these sentencing factors).[16] Based on the court's balancing of these sentencing factors, the court stated that a 365-month sentence "is sufficient but not greater than necessary to meet [the] objectives

---

[16] In addition, the court explicitly considered the advisory GSR, see 18 U.S.C. § 3553(a)(4)(A), and the need for Ubiles to pay restitution to the Torres family, see id. § 3553(a)(7).

of punishment and of deterrence in this case." See id. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary . . . .").

Although "a district court is obliged to 'consider all relevant section 3553(a) factors, it need not do so mechanically,'" Ruiz-Huertas, 792 F.3d at 226 (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)), by, for example, "address[ing] those factors, one by one, in some sort of rote incantation when explicating its sentencing decision," id. (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)). Where, as here, "the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is sufficiently explained to pass muster under section 3553(c)." Vargas-García, 794 F.3d at 166 (quoting United States v. Fernández–Cabrera, 625 F.3d 48, 54 (1st Cir.2010)).[17]

The discrepancy between Ubiles's 365-month sentence and Negrón's 144-month sentence does not alter this conclusion.[18] As

---

[17] Ubiles also appears to attack the adequacy of the court's explanation by highlighting the lack of extended explanation for disregarding the parties' recommended total offense level and GSR. This argument is a nonstarter. "[A]lthough a district judge has a duty to adequately explain [her] choice of a particular sentence, '[she] has no corollary duty to explain why [she] eschewed other suggested sentences.'" Arsenault, 833 F.3d at 32 (quoting Ruiz–Huertas, 792 F.3d at 228).

[18] Although § 3553(a)(6) lists "the need to avoid unwarranted sentence disparities among defendants with similar records who

Ubiles acknowledges in his brief, he and Negrón are hardly similarly situated. Although both participated in the crime, Ubiles clearly took the laboring oar in this carjacking: he conceived the plan, enlisted Negrón to assist him, used his car to impede the path of travel of Torres's vehicle, forced Torres to the passenger seat, drove Torres's car to a secluded area, directed him at gunpoint to the edge of a cliff, and shot Torres in the head and killed him. In short, given the different roles that Ubiles and Negrón played in this tragic saga, it was by no means unreasonable to sentence them differently. Cf. Arsenault, 833 F.2d at 33-34 n.5 (rejecting sentencing-disparity challenge where defendant "proffer[ed] no evidence that the [other offenders] cited were in fact identically situated to him").[19]

Discerning no procedural error, we now turn to Ubiles's claim that his sentence is not substantively reasonable.

---

have been found guilty of similar conduct" as a sentencing factor that may be relevant, Ubiles clarifies in his reply brief that he is not making an argument about "unwarranted disparity." Therefore, we consider Ubiles's reference to Negrón's sentence to be a part of his larger argument that the district court failed to adequately explain the reasons for its chosen sentence.

[19] We emphasize that this conclusion is dictated by our highly deferential standard of review and our sentence-disparity precedent. Even though there are significant differences between Ubiles and Negrón, they both actively participated in this crime, and we are somewhat baffled by the 221-month gulf between their respective sentences. Ultimately, however, because the district court adequately explained the sentence it imposed on Ubiles, we must reject Ubiles's argument about the adequacy of the explanation.

## 2. Substantive Reasonableness

Ubiles's substantive-reasonableness challenge — in which he argues that the district court abused its discretion by focusing only on the nature of the offense, the deterrent and punitive objectives of sentencing, and the maximum sentence suggested by the guidelines to the exclusion of factors favorable to Ubiles — fares no better. Although he emphasizes the sentencing balance that the parties struck in the plea agreement, the district court was not bound by the parties' recommendations. See Gall, 829 F.3d at 75. Instead, it was obligated to impose a sentence that was reasonable.

Reasonableness in this context is not a static concept: "[i]n most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences." Lasalle González, 857 F.3d at 63 (alteration in original) (quoting United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015)). At bottom, "[a] sentence is substantively reasonable if the court gives a 'plausible rationale' and reaches 'a defensible result.'" Id. (quoting United States v. Díaz-Arroyo, 797 F.3d 125, 129 (1st Cir. 2015)). Both hallmarks of a substantively reasonable sentence are present in this case.

First, the sentencing court's rationale was plausible. Although Ubiles characterizes the court's reasoning as "conclusory," this label is simply inapt. As we explained above,

- 35 -

the district court's reasoning appropriately stressed the seriousness of Ubiles's crime and the need for the sentence imposed to provide just punishment, deterrence, and protection of the public. See Vargas-García, 794 F.3d at 167. As he did before the district court, Ubiles stresses to us certain mitigating factors: the unlikelihood that he will recidivate, based on his age upon release; his employment history; and his relationships with his family and the community. But "a sentencing court is entitled to conduct an appropriate triage and weigh some factors more heavily than others." Id. That occurred in this case.

Similarly, the district court reached a defensible result. The district court explicitly determined that its sentence satisfied the so-called "parsimony principle" — that a sentence be "'sufficient, but not greater than necessary' to achieve the legitimate goals of sentencing." Id. (quoting 18 U.S.C. § 3553(a)). And, given the heinous nature of this crime and the statutory maximum penalty of life imprisonment, it was reasonable for the district court to determine that a 365-month sentence was appropriate.

**THE END**

For these reasons, we conclude that the government did not breach the plea agreement and that the sentence imposed by the district court was neither procedurally nor substantively unreasonable. Therefore, we affirm the judgment below.